IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | |
|     Plaintiff, | No. 2:11-cv-00653 JAM KJN |
|     v. | |
| DULCE TORRES, INDIVIDUALLY and d/b/a PRIME TIME BAR AND GRILL A/K/A EL MALECON BAR & GRILL, | |
|     Defendant. | FINDINGS AND RECOMMENDATIONS |

Presently before the court is plaintiff's application for default judgment (Dkt. No. 8), to which no written opposition was filed.[1] The court heard plaintiff's application for default judgment on its law and motion calendar on September 22, 2011. Plaintiff's counsel's appearance at the hearing was excused by an order entered in advance of the hearing. (Order, Sept. 20, 2011, Dkt. No. 11.) No appearance was made by or on behalf of defendant. For the reasons stated below, the undersigned recommends that plaintiff's motion for default judgment be granted, that judgment be entered in plaintiff's favor, and that plaintiff be awarded $10,000 in damages.

---

[1] This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

## I. BACKGROUND[2]

Plaintiff, a California corporation, is a closed-circuit distributor of sports and entertainment programming. (See Pl.'s Compl. ¶¶ 6, 10-11, Dkt. No. 1; Gagliardi Aff. ¶ 3, Dkt. No. 8, Doc. No. 8-4.) Pursuant to a contract, plaintiff acquired exclusive commercial exhibition licensing rights to a televised boxing match entitled "'The Event': The Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program," which was broadcast via telecast on Saturday, March 13, 2010 (the "Program").[3] (Pl.'s Compl. ¶¶ 9-10; Gagliardi Aff. ¶ 3 & Ex. 1.) Thereafter, plaintiff entered into sublicensing agreements with various commercial entities across North America, through which it granted limited public exhibition rights to the entities for the benefit and entertainment of the patrons within the entities' respective establishments (e.g., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.). (Pl.'s Compl. ¶ 10; Gagliardi Aff. ¶ 3.) Plaintiff made transmission of the Program available only to its commercial customers, which were commercial entities that had paid plaintiff a commercial sublicense fee to broadcast the program. (Gagliardi Aff. ¶ 8; see also Pl.'s Compl. ¶¶ 10-11.) For example, to exhibit the Program in a commercial establishment that had a maximum occupancy of 101 to 200 people, the commercial sublicense fee would have been $2,000. (Gagliardi Aff. ¶ 8 & Ex. 2.)

Defendant is alleged to be an owner, operator, licensee, permittee, person in charge of, and doing business as, Prime Time Bar and Grill, also known as El Malecon Bar & Grill, operating at 2518 East Fremont Street, Stockton, California 95205 ("Prime Time"). (Pl.'s Compl. ¶ 7; Exhibits to Medine Aff., Dkt. No. 8, Doc. No. 8-3.) Defendant did not obtain a license to exhibit the Program from plaintiff. (See Pl.'s Compl. ¶¶ 12-13; Gagliardi Aff. ¶ 7.)

---

[2] These background facts are taken from plaintiff's complaint and the affidavits submitted in support of plaintiff's application for default judgment. (Dkt. Nos. 1, 8.)

[3] The Program included "all under-card bouts and fight commentary encompassed in the television broadcast of the event." (Pl.'s Compl. ¶ 9.)

2

On March 12, 2010, plaintiff's investigator, John Medine of Slay & Associates investigative agency, entered Prime Time and observed the unauthorized broadcast of a portion of the Program on four televisions located inside the establishment. (Medine Aff. at 2.) Medine represents that he entered Prime Time at approximately 8:30 p.m. after paying a five dollar cover charge, purchased a beverage from the bar, observed the first three rounds of the "Pacquiao vs. Clottey" fight on the four televisions, and left the establishment at about 9:10 p.m. (Id. at 2-3.) Medine states that he counted the number of patrons at Prime Time three times, resulting in "head counts" of 157, 159, and 161 patrons. (Id. at 3.)

On March 9, 2011, plaintiff filed this action alleging that defendant unlawfully intercepted and intentionally broadcast the Program at Prime Time for the purpose of direct or indirect commercial advantage and/or private financial gain. (See generally Pl.'s Compl.) Plaintiff alleges four claims for relief, which are labeled as "Counts" in the complaint. Plaintiff's first claim for relief alleges that defendant engaged in the unauthorized publication or use of communications in violation of the Federal Communications Act of 1934, 47 U.S.C. §§ 605 et seq.[4] (Pl.'s Compl. ¶¶ 8-17.) Its second claim alleges that defendant engaged in the unauthorized interception, reception, divulgence, display, and exhibition of the Program at Prime Time in violation of 47 U.S.C. §§ 553 et seq.[5] (Pl.'s Compl. ¶¶ 18-22.) Plaintiff's third claim alleges a common law claim of conversion. (Id. ¶¶ 23-26.) Its fourth claim for relief alleges a violation of California Business and Professions Code §§ 17200 et seq. (Pl.'s Compl. ¶¶ 27-36.)

On June 22, 2011, plaintiff filed a Proof of Service with the court that demonstrates that on May 20, 2011, May 21, 2011, and May 24, 2011, plaintiff, through a process server, attempted personal service on defendant at the address for Prime Time, 2518 East

---

[4] Title 47 U.S.C. § 605 and provisions that follow prohibit the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming.

[5] Title 47 U.S.C. § 553 and related provisions prohibit the unauthorized interception or receipt, or assistance in the intercepting or receiving, of cable service.

Fremont Street, Stockton, California 95205.  (Proof of Service, Dkt. No. 5.)  It further reflects that on May 24, 2011, plaintiff's process server left the summons, complaint, and related documents with "John Doe"—a person listed as the "person in charge" who refused to provide his name—with instructions to deliver the documents to defendant.  (Id.)  The Proof of Service further reflects that a copy of the summons, complaint, and related documents were mailed to defendant on May 25, 2011.  (Id.)

On June 28, 2011, plaintiff requested that default be entered by the Clerk of Court against defendant.  (Req. To Enter Default, Dkt. No. 6.)  On June 29, 2011, the Clerk of Court entered a certificate of entry of default against defendant.  (Cert. of Entry of Default, Dkt. No. 7.)  In entering default, the Clerk of Court stated that it appeared from the record and papers on file in the action that defendant was duly served with process yet failed to appear, plead, or answer plaintiff's complaint within the time allowed by law.  (Id.)

On July 22, 2011, plaintiff filed the application for default judgment that is presently before the court.  The application seeks judgment on plaintiff's claims for violation of 47 U.S.C. § 605 and 47 U.S.C. § 553, and for common law conversion.[6]  Plaintiff requests judgment in the amount of $112,000.[7]  Plaintiff filed proofs of service indicating that it served defendant with the application for default judgment and related documents by mail.  (See Proofs of Service, Dkt. No. 8.)  No response to plaintiff's application is on record in this action.

II.     LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

---

[6] The application does not specifically request judgment on plaintiff's claim that defendant violated California Business and Professions Code §§ 17200 et seq., and plaintiff's memorandum in support of the application does not address this claim.  Accordingly, the undersigned does not address this claim.

[7] Although plaintiff's application for default judgment states that plaintiff seeks attorney's fees and relevant costs, plaintiff has provided no legal argument or evidentiary support for its request for fees and costs.  Accordingly, the undersigned does not address those requests.

4

defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002), cert. denied, 537 U.S. 1018 (2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law), cert. denied, 129 S. Ct. 40 (2008); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d

at 560 (stating that although a default established liability, it did not establish the extent of the damages).

III.  ANALYSIS

    A.  Appropriateness of the Entry of Default Judgment Under the Eitel Factors

        1.  Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent the entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

        2.  Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Plaintiff seeks entry of default judgment on its claims brought pursuant to 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a).[8] Plaintiff's inability to allege the precise nature of the intercepted transmission in this case, which is largely due to defendant's failure to appear or defend herself in the action, raises a question regarding the scope of 47 U.S.C. § 605(a) and the

---

[8] The undersigned does not address the merits of, or sufficiency of the allegations in support of, plaintiff's state law claim for conversion. As discussed more fully below, the undersigned need not reach plaintiff's conversion claim because the recommended statutory damages, if awarded, will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative.

6

sufficiency of plaintiff's claim under that provision. The Federal Communications Act prohibits, among other things, commercial establishments from intercepting and broadcasting radio communications to its patrons. See 47 U.S.C. § 605(a). In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).

The scope of section 605(a) is less clear with respect to transmissions intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a). Section 553(a) states, in relevant part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).[9]

---

[9] Section 553 carries lower minimum statutory damages and lower enhanced damages than section 605. Compare 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii) (providing for the award of statutory damages of not less than $1,000 and no more than $10,000, and under certain circumstances enhanced damages of up to $100,000 per violation), with 47 U.S.C. § 553(c)(3)(A)(ii) (providing for the award of statutory damages of not less than $250 and not more than $10,000, and under certain circumstances enhanced damages of up to $50,000 per violation).

Here, plaintiff has not alleged whether the transmission that defendant intercepted was intercepted through a cable system or a satellite television signal. As plaintiff's brief correctly suggests, a split of authority has developed regarding the scope of section 605(a) in that numerous courts have concluded that section 605(a) applies exclusively to broadcasts obtained by way of a satellite television signal, as opposed to transmissions over a cable system, and that section 553 applies exclusively to transmission over a cable system. Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not "overlapping statutes" and are thus mutually exclusive), with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely overlapping); see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing the disagreement between the holdings in Norris and Sykes, and holding "that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system, and no more" (internal quotation marks omitted).).

At a minimum, plaintiff's complaint and evidence support a conclusion that defendant intercepted, without authorization, a transmission of the Program and broadcast it to its patrons. (Pl.'s Compl. ¶¶ 3, 12-13, 19-20; Medine Aff. at 2-3.) Plaintiff essentially concedes that its complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendant. Plaintiff argues, however, that although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable system or satellite broadcast), it "should not be prejudiced" given defendant's failure to appear or defend itself in this action. (Pl.'s Memo. of P. & A. in Supp. of Application for Default J. at 10, Dkt. No. 8, Doc. No. 8-1.) The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendant's failure to appear or defend itself in this action, plaintiff should not suffer the resulting prejudice. In any event, the split of authority presented

above has little practical impact in this case because the undersigned recommends the entry of a judgment in the total amount of $10,000, which is the maximum, non-enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II). Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the Eitel factors are concerned, the complaint and record before the undersigned favor entry of default judgment.

        3.     Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks a significant amount of damages, i.e., $112,000. However, plaintiff's request for statutory damages and damages for conversion are tailored to defendant's specific wrongful conduct. Plaintiff seeks statutory damages under the federal statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages, the statutes involved contemplate such an award under certain circumstances.[10] Under these circumstances, the undersigned concludes that this factor favors the entry of default judgment.

        4.     Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.[11] See, e.g., Elektra Entm't Group Inc. v. Crawford, 226

---

[10] Whether plaintiff is entitled to an award of this size is a different issue, which the undersigned addresses in greater detail below.

[11] Defendant's failure to file an answer in this case further supports the conclusion that the possibility of a dispute as to material facts is minimal.

9

F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff made numerous attempts to personally serve defendant with the summons and complaint and ultimately effectuated substituted service of those documents on defendant. Moreover, plaintiff served defendant by mail with its application for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date. Thus, the record suggests that defendant has chosen not to defend herself in this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); ACS Recovery Servs., Inc. v. Kaplan, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendant and recommends the same. What remains is the determination of the amount of damages to which plaintiff is entitled.

B.  Terms of the Judgment to Be Entered

After determining that a party is entitled to a default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 as a result of defendant's unlawful interception and broadcast of the Program, and recommends the same.

Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. §§ 605(e)(3)(C)(i)(II), (e)(3)(C)(ii). Where a violation 47 U.S.C. § 553(a) is concerned, a court may award statutory damages of "not less than $250 or more than $10,000," and may increase the award up to $50,000 if the "violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(A), (B).

Here, plaintiff seeks a judgment in the amount of $112,000. Plaintiff's application for default judgment and proposed order indicate that this sum consists of $110,000 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $2,000 as compensatory damages arising from defendant's act of conversion. (See Notice of Appl. & Appl. for Default J. at 2-3; Proposed Order at 2, Dkt. No. 8, Doc. No. 8-6.)

Plaintiff's investigator's affidavit states that approximately 160 patrons were inside the restaurant on the night in question, and that they likely paid a five dollar cover charge to enter. (See Medine Aff. at 2-3.) The affidavit further states that Prime Time was unlawfully

broadcasting the Program on four televisions. (Id. at 2.) Plaintiff provided no evidence that Prime Time prepared any special advertising for the broadcast of the Program or that Prime Time charged a special premium for food or drink that night. Plaintiff does not suggest that defendant is a repeat offender with respect to intercepting transmissions of the type at issue here. Balancing these facts with the widespread problem of piracy and the need for an award sufficient to deter future piracy, the undersigned recommends an award of statutory damages in the amount of $10,000. On the record before the court, the undersigned does not find that this case merits an award of enhanced damages.

Plaintiff also seeks actual damages for defendant's alleged tortious act of conversion in the amount of $2,000, which consists of the fee that defendant would have had to pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.[12] (See Pl.'s Proposed Order at 2; Gagliardi Aff. ¶ 8 & Ex. 2.) The undersigned does not recommend an award of damages with respect to plaintiff's claim for conversion. The statutory damages provisions at issue serve not only a deterrent function, see J & J Sports Prods. v. Orellana, No. 08-05468 CW, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but also a compensatory function, which is evidenced by provisions that permit the award of statutory damages or actual damages in a civil action. See 47 U.S.C. § 605(e)(3)(C)(i); 47 U.S.C. § 553(c)(3)(A)(i). Here, the recommended award of statutory damages in the amount of $10,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted. Accordingly, the undersigned recommends that plaintiff be awarded no damages on its conversion claim.[13]

---

[12] Damages for conversion are measured, in relevant part, by the value of the property at the time of the conversion. Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221, 7 Cal. Rptr. 3d 597, 608 (Ct. App. 2003).

[13] Because the undersigned does not recommend an award of damages on plaintiff's conversion claim, the court need not address the question of whether an interest in intangible

Finally, although the prayer for relief in the complaint and the application for default judgment indicate that plaintiff seeks the award of costs and attorney's fees, the application for default judgment contains no argument or evidence in support of such a request. Accordingly, the undersigned does not recommend the award of costs or attorney's fees.

IV.   CONCLUSION

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1.   Plaintiff's application for default judgment (Dkt. No. 8) against defendant Dulce Torres, individually and doing business as Prime Time Bar and Grill, also known as El Malecon Bar & Grill, be granted.

2.   The court enter judgment in plaintiff's favor with respect to its claims brought pursuant to 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a).

3.   The court award statutory damages in an amount of $10,000 to plaintiff.

4.   This case be closed and all future dates be vacated.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

---

property such as an exclusive license to distribute a broadcast signal is the proper subject of a claim of conversion under California law.  Compare, e.g., Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97, 119-20, 55 Cal. Rptr. 3d 621, 638 (Ct. App. 2007) (acknowledging California courts' traditional refusal to recognize as conversion the unauthorized taking of intangible interests that are not merged with or reflected in something tangible), with DIRECTV, Inc. v. Pahnke, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (concluding that the exclusive right to distribute proprietary cable programming is the proper subject of a conversion claim under California law), and Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (holding that plaintiff's alleged exclusive rights to distribute a telecast in California constituted a right to possession of property supporting a claim of conversion).

1  Failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d
3  1153, 1156-57 (9th Cir. 1991).

        IT IS SO RECOMMENDED.

DATED: September 22, 2011

                                  _____
                                  KENDALL J. NEWMAN
                                  UNITED STATES MAGISTRATE JUDGE